## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

TONNETTE GARZA-FITZWATER,

    Plaintiff,

vs.

UNITED PARCEL SERVICE, INC.,

    Defendants.

Case No.:

**JURY TRIAL DEMANDED**

/

## COMPLAINT

**COMES NOW,** Tonnette Garza-Fitzwater ("Ms. Garza"), by and through the undersigned counsel, files this Complaint against Defendant, United Parcel Service, Inc. ("UPS") for violations of Title I of the Americans with Disabilities Act, 42 U.S.C. 12101 *et. seq.* and the Florida Civil Rights Act, Fla. Stat. § 760.01, *et seq.*, as follows:

## JURISDICTION AND VENUE

1.    This suit is brought and jurisdiction lies pursuant to Title I of Americans with Disabilities Act, 42 U.S.C. §12117, *et seq.*, ("ADA"), and supplemental claims jurisdiction for claims under the Florida Civil Rights Act ("FCRA"), Fla. Stat. §760.11. *et seq.*

2.    UPS does business in Florida, and a substantial portion of the events or omissions giving rise to Ms. Garza's claims occurred in Jacksonville, Duval County, Florida, such that venue is proper within the United States District Court for the Middle District of Florida, Jacksonville Division, pursuant to 28 U.S.C. §§ 1391 (b)(1)-

(b)(2).

## PARTIES

### MS. GARZA

3.　Tonnette Garza-Fitzwater is a deaf individual, over the age of eighteen (18), and otherwise *sui juris* in all respects.

4.　Ms. Garza uses American Sign Language ("ASL") to understand communication. Ms. Garza expresses communication through written communication, using her voice, and signing in ASL.

5.　At all times material, Ms. Garza was and is deaf, and is an "individual with a disability" because she is substantially limited in the major life activity of hearing. 42 U.S.C. § 12102; Fla. Stat. § 760.01, *et seq*.

6.　Ms. Garza is a "qualified individual with a disability" as defined in the ADA.

### DEFENDANT

7.　Defendant, UPS, is one of the nation's largest package distributors with approximately 500,000 employees worldwide and with more than 10,000 locations. UPS is an "employer" within the meaning of the ADA, 42 U.S.C. §12111(5)(A) and Fla. Stat. § 760.02.

8.　UPS is a For Profit Corporation doing business in Florida, and employed Ms. Garza as a Pre-loader at their Jacksonville, Florida, facility located at Presidential Court, Jacksonville, Florida.

## MS. GARZA'S COMPLIANCE WITH ADMINISTRATIVE PRE-REQUISITES

9.     Ms. Garza has timely complied with all conditions precedent to jurisdiction under the ADA, 42 U.S.C. §12117 and the FCRA, Fla. Stat. § 760.11.

10.     Ms. Garza's Received a Notice of Determination by The Florida Commission on Human Relations ("FCHR") on June 14, 2022, which was received by Ms. Garza on or about June 15, 2022. The Notice provides Plaintiff one (1) year to file in federal court.

## STATEMENT OF FACTS

11.     Ms. Garza is a single mother with four (4) children.

12.     Ms. Garza was born deaf. She uses American Sign Language to communicate. Ms. Garza can speak to some degree but is told often people do not understand her voice.

13.     Ms. Garza began her employment at UPS on October 6, 2020, as a full-time package handler. During her job interview, she told UPS her goal was to become a package car driver because her brother and sister-in-law work as truck drivers for UPS

14.     Ms. Garza secured her position at UPS through the help of Vocational Rehabilitation ("VR"). To help in securing the position, VR assisted to ensure ASL interpreters were provided for approximately the first three (3) weeks of her employment. The ASL interpreters were used for meetings, interactions with other employees and managers, and for training.

15.    UPS was told by VR and by Ms. Garza that Ms. Garza would require interpreting services upon occasion while employed at UPS.

16.    After approximately the first three (3) weeks of employment, qualified ASL interpreters were no longer provided.

17.    According to UPS policies, Ms. Garza can make requests for interpreters through her supervisors and managers. Ms. Garza renewed her request for ASL interpreters with her managers and supervisors for meetings, training, and when there were more complicated or confusing employment issues to address.

18.    ASL Interpreters were not provided, either onsite or through video remote interpreting ("VRI").

19.    In lieu of qualified interpreters, UPS would occasionally rely upon other employees who are not trained as interpreters to sign for Ms. Garza. These employees did not have sufficient ASL skills to interpret.

20.    These employees also openly vocalized how frustrating it was for them to be pulled away from their own work to "sign" for Ms. Garza when they had their own work to do. This created unnecessary hostility in the workplace and made Ms. Garza feel like a burden and stifled communication.

21.    In December of 2020, Ms. Garza filed a grievance about UPS's failure to provide interpreters with Teamsters Local Union 512, but still no interpreters were provided.

22.    Ms. Garza made affirmative requests for her managers to write on paper with her or use their cell phones to text back and forth for ad hoc communication, but

her managers refused. In December 2020, Ms. Garza filed a grievance with the Teamsters Local Union 512 about this issue. But her managers still refused to text or write with her with any regularity. This made the workplace hostile because her managers did not want to expend effort to communicate with Ms. Garza. When she would approach to try to talk, she would be told they were busy, or to contact them later, but would then avoid her.

23.    Ms. Garza would constantly contact her deaf boyfriend, David Prevatt, and describe to him how she was being treated at work. Mr. Prevatt would attempt to assist Ms. Garza when possible. Mr. Prevatt was aware of the stress the ongoing communication issues were causing for Ms. Garza.

24.    Due to the fact that Mr. Prevatt had a better command of English and could write better than Ms. Garza, upon occasion Mr. Prevatt would contact UPS management on Ms. Garza's behalf.

25.    After gaining seniority status in approximately December 2020, and with her brother's help, Ms. Garza began bidding for truck driver positions.

26.    Ms. Garza has, at all times relevant, held a standard driver's license issued by the State of Florida which would satisfy the requirement to begin the

process to promote to a package car driver.[1]

---

[1]To operate a commercial motor vehicle with a Gross Vehicle Weight Rating ("GVWR") of 10,001-26,000 pounds requires a Department of Transportation (DOT) Medical Evaluation Certification, also

27.     Ms. Garza was told by the manager, Joe Bradley, that UPS does not allow deaf people to drive the package trucks and she need not apply because she won't be hired.

28.     Ms. Garza showed Joe information on her cell phone from the Department of Transportation ("DOT") that said deaf people can drive trucks. After Ms. Garza showed UPS this info, Plaintiff was told she would not be eligible for 2-3 years, which well exceeded the approximate nine month waiting time.

29.     Ms. Garza became aware of hearing employees, with less seniority than she had, and who joined UPS after her, who were hired as truck drivers as she continued to wait for the opportunity to promote to a truck driver position. She was never contacted by UPS about any of the truck driving positions to which she bid.

30.     After the "peak season" in approximately January of 2021, UPS held meetings every Friday. Due to COVID, the meetings consisted of employees standing in various locations on the floor, at a distance from each other while wearing face masks. This made communication extremely difficult because it was impossible to lipread other employees, or to be close enough to leverage any communication benefits.

---

known as a DOT card. To pass the medical examination an individual must meet the hearing requirements set by the DOT. The DOT regulations prohibit an individual who does not pass the hearing requirements listed in the regulations from operating a commercial motor vehicle in interstate commerce unless that individual receives an exemption provided by the DOT. 49 C.F.R. § 391.41(b). Since 2013, the Federal Motor Carrier Safety Administration has granted an exemption of the hearing requirements as outlined in 49 C.F.R. § 391.41 (b) (11), for individuals who demonstrate their ability to safely operate a commercial motor vehicle. Ms. Garza was told not to even apply to begin the process because UPS would not allow her to drive because she was deaf.

31.     The Friday meetings were used to relay safety and training information, and UPS also used them as what appears to be a vehicle for employee morale. On occasion at the meetings, UPS would play work related trivia games and employees would respond to the questions and win prizes and money, but, because Ms. Garza was not afforded an interpreter, she could never answer the questions to win any prizes.

32.     At these meetings, UPS also encouraged employees to ask questions, but Ms. Garza was unable to understand the questions.

33.     UPS's failure to provide reasonable accommodations is augmented by their failure to train staff which created a dangerous and hostile workplace for Ms. Garza.

34.     To get Plaintiff's attention, other employees would throw boxes at her, and boxes were being left everywhere around her. Ms. Garza was injured by the box throwing two times. Ms. Garza was afraid to leave for medical attention because she was warned she was on probation because she was still a new employee.

35.     Ms. Garza had also requested to become a "driver helper" so she could work and learn from her brother, and was told if she reported injuries, she would be precluded from becoming a driver helper.

36.     Ms. Garza was also told to avoid reporting injuries because it will affect metrics used by UPS to award bonuses and other perks.

37.     In approximately January to February of 2021, Ms. Garza was having issues with her paychecks, and tried to talk to her manager to correct the problems, but

they could not communicate effectively. She requested an ASL interpreter because the issue had become unnecessarily confusing, and she was tired of her paychecks being wrong.

38.     As Ms. Garza attempted to discuss the issue again with her manager Joseph, a female supervisor, Sharradah, inserted herself into the conversation. To get Ms. Garza to stop talking, Sharradah physically stood up and grabbed Ms. Garza's arms to stop her from using sign language and then mimicked her deafness in a rude way. Ms. Garza was humiliated and filed a grievance with the Teamsters Local Union 512 about this event.

39.     After filing the grievance, Sharradah started harassing Plaintiff. When Sharradah saw Plaintiff, she would make gestures to mimic walking far away from Plaintiff as to not to touch Plaintiff, while taunting her. UPS was openly engaging in retaliation towards her for seeking help with serious workplace hostility.

40.     When unable to convince UPS to provide an interpreters, Ms. Garza asked for help from the Deaf program at the Center for Independent Living in Jacksonville ("CIL"). The deaf advocate at CIL helped Plaintiff find a phone number to call at UPS. Ms. Garza called what is believed to be the UPS HR Hotline and she eventually had a phone conversation with Mr. Washington, the HR GEO Supervisor at UPS.

41.     During the phone call with Mr. Washington, Ms. Garza discussed her need for interpreters, co-workers throwing boxes at her, and her desire to be a UPS package truck driver. Mr. Washington told Ms. Garza UPS would investigate her

concerns, and acknowledged training was needed. But no changes occurred as a result of her requests.

42.     A subsequent in person meeting was held, and, on information and belief, in attendance were Mr. Washington and Jason Hubbard, the General Manager, and the same issues are discussed to include the incident where Sharaddah pushed Ms. Garza's hands down to stop her from using sign language. But no changes occurred as a result of this meeting, and Plaintiff was still being denied interpreters and being excluded.

43.     After Ms. Garza started asking for help and filing grievances, her managers would not talk to her directly, and avoided her, creating a very hostile workplace. Ms. Garza was being retaliated against for speaking up for her rights and seeking help to communicate with her employer.

44.     Instead of talking directly to Ms. Garza, the managers would talk to an employee and tell the employee to talk to Plaintiff. It was extremely difficult to get her managers, to talk to her at all.

45.     On June 12, 2021, Ms. Garza badly injured her finger when another employee left a large metal item above her head, which fell and struck Ms. Garza. Upon looking at the injury, UPS told Ms. Garza her to let them know if the injury became worse, but there was no reason to see medical attention.

46.     On June 13, 2021, Ms. Garza's finger became worse, and she sought treatment at Baptist Hospital. From June 13 to July 6, 2021, Ms. Garza sent text messages and called UPS (to include to Joseph) to provide updates about her injury

and her medical treatment. She ultimately told her managers she was cleared to return to work between July 16 - 20th, 2021.

47.    On July 14, 2021, UPS sent Ms. Garza a letter, requiring she contact UPS. On approximately July 15, 2021, Ms. Garza spoke with UPS about her status, and it was then UPS told her she must be seen by workers' compensation doctors, not regular doctors and UPS wanted copies of her medical notes.

48.    Ms. Garza was confused and explained how she had been in constant contact with UPS for a month, and no one contacted her back and was not familiar with the workers' compensation requirements. Ms. Garza agreed to meet with UPS to discuss this, but only if they would secure an interpreter to avoid further communication issues.

49.    On July 21, 2021, a meeting was held with Ms. Garza regarding the injury and her return to work. Believed to be in attendance were Barry Nolan (Union Steward), Andrea Blue (UPS Human Resources), Joseph (Manager), Wendy (Preload Supervisor), and one other female.

50.     The ASL interpreter was late, and UPS tried to convince Ms. Garza to begin the meeting before the interpreter arrived, but she refused.

51.    The interpreter eventually arrived, and UPS challenged Ms. Garza stating she never informed them of her injury or updated her absence. Ms. Garza once again showed text message proof that she told several managers at UPS of the injury. While Ms. Garza continued to retrieve the text messages from her cell phone and was looking down the UPS managers in the room continued to talk.

52.     When Ms. Garza looked up, the ASL interpreter was signing, and Ms. Garza asked UPS to repeat what was said because she was looking down at her phone (and cannot hear what is said and must watch the interpreter).

53.     UPS refused to repeat what was being said. Then Joseph physically leaned in and began whispering to Andrea Blue from Human Resources with a purposeful low volume, preventing the interpreter from hearing, while maintaining eye contact with Ms. Garza in a menacing way.

54.     Ms. Garza felt degraded and became extremely upset by the pattern of exclusion and by creating a hostile workplace with actions targeting her deafness. Ms. Garza left the meeting crying, and the Union Steward told Ms. Garza to call the Union Hall later for help.

55.     As directed, Ms. Garza began seeing doctors in the workers' compensation system. Ms. Garza is now told by the workers' compensation doctor she can return to work likely on August 4, 2021, but UPS shall let her know.  Plaintiff then contracts COVID.

56.     UPS did not contact Ms. Garza, and on August 16, 2021, UPS removes her from the employment roll, without telling Ms. Garza. In September 2021, Ms. Garza sends an email message to human resources to find out about the status of her return date, but UPS never responds.

57.     On or around December 15, 2021, Ms. Garza filed a Charge of Discrimination with the Florida Commission on Human Relations which was dually filed with the EEOC.

58.     UPS discriminated against Ms. Garza with malice and reckless disregard for her rights when it refused to provide ASL interpreters and failed to train staff.

59.     UPS further discriminated against Ms. Garza with malice and reckless disregard for her rights by denying her the opportunity to take the driver orientation training and to comply with the DOT hearing exemption program.

60.     UPS further discriminated against Ms. Garza with malice and reckless disregard for her rights by maintaining and promoting a hostile workplace wherein it engaged in targeting behavior based on her deafness.

61.     UPS intentionally violated the rights of Ms. Garza, who is entitled to protection under the anti-discrimination statutes, and she has suffered emotional injury and pecuniary loss as a result.

62.     UPS acted with malice and reckless disregard to Ms. Garza's statutory protected rights, and she is entitled to punitive damages from UPS.

**COUNT ONE**

**VIOLATION OF TITLE I OF THE ADA**

63.     Ms. Garza repeats and re-alleges allegations ¶¶ 1-62 in support of her claims.

64.     UPS is an employer as defined under the ADA. 42 U.S.C. §§ 12111, 12112.

65.     At all times material, Ms. Garza is an individual with a disability because she is deaf and substantially limited in the major life activity of hearing.

66.     Ms. Garza is a qualified individual with a disability as defined in 42

U.S.C. § 12111.

67.     Since at least October 2020, UPS has engaged in unlawful employment practices against Ms. Garza in violation of Title I of the ADA by refusing to provide qualified interpreters. 42 U.S.C. § 12112(a).

68.     Since at least October 2020, UPS has engaged in unlawful employment practices against Ms. Garza in violation of Title I of the ADA by promoting a hostile workplace based on her disability. 42 U.S.C. § 12112(a).

69.     Since at least November 2020, UPS has engaged in unlawful employment practices against Ms. Garza in violation of Title I of the ADA by refusing to allow her to promote to a truck driver position based on her disability. 42 U.S.C. § 12112(a).

70.     Since at least November 2020, Defendant has engaged in unlawful employment practices against Ms. Garza by utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability. 42 U.S.C. § 12112(b)(3).

71.     Since at least November 2020, Defendant has engaged in unlawful employment practices by limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee. 42 U.S.C. § 12112.

72.     Since at least November 2020, Defendant has engaged in using qualification standards, employment tests or other selection criteria that screen out

or tend to screen out an individual with a disability or a class of individuals with disabilities.  42 U.S.C. § 12112.

73.    Since at least October 2020, Defendant has engaged in unlawful employment practices against Ms. Garza by treating her differently and disparately compared to non-disabled people or non-deaf people in violation of Title I of the ADA. 42 U.S.C. § 12112(b)(4).

74.    The employment practices contained in Count I resulted in loss of income and adverse employment actions and other economic harms against Ms. Garza.

75.    The unlawful employment practices contained in Count I caused significant emotional and mental anguish, pain and suffering, stress, humiliation, and frustration to Ms. Garza.

76.    As a direct and proximate result of Defendant's continuous discrimination on the basis of disability, Ms. Garza suffered pecuniary damages, actual damages, mental anguish, emotional distress, loss of enjoyment of life, and other non-pecuniary losses, and punitive damages should be awarded against UPS.

77.    The unlawful practices contained in Count I were done by UPS with malice or with reckless disregard to Ms. Garza's federally protected rights, and she is entitled to punitive damages from UPS.

## COUNT II

## ADA RETALIATION

78. Ms. Garza repeats and re-alleges allegations ¶¶ 1-62 in support of her claims.

79. UPS is an employer as defined under the ADA. 42 U.S.C. §§ 12111, 12112.

80. Ms. Garza is an individual with a disability as defined in 42 U.S.C. § 12111, in that she is deaf and substantially limited in the major life activity of hearing.

81. Ms. Garza is a qualified individual with a disability as defined in 42 U.S.C. § 12111. At all times material, Ms. Garza is an individual with a disability.

82. Defendant engaged in unlawful retaliation against Ms. Garza because she engaged in the protected activities of requesting ASL interpreters, requesting staff be trained to work with deaf employees, applying for a promotion to a truck driving position, and when filing union grievances to protect her federal and state employment rights.

83. Defendant's retaliation against Ms. Garza violated Title I of the Americans with Disabilities Act. 42 U.S.C. § 12203.

84. The unlawful employment practices contained in Count II caused significant emotional and mental anguish, pain and suffering, stress, humiliation, and frustration to Ms. Garza.

85. As a direct and proximate result of Defendant's continuous discrimination on the basis of disability, Ms. Garza suffered pecuniary damages, actual damages, mental anguish, emotional distress, loss of enjoyment of life, and

other non-pecuniary losses.

86.    The unlawful employment practices contained in Count II were done by UPS with malice and with reckless disregard to the federally protected rights of Ms. Garza, and she is entitled to punitive damages from UPS.

## COUNT III

## VIOLATIONS OF FCRA- SEGREGATION AND TRAINING

87.    Ms. Garza realleges the allegations in ¶¶ 1-62 of this Complaint.

88.    Defendant is an employer and a covered entity under the FCRA subject to its provisions. Fla. Stat. § 760.02, *et seq*.

89.    Ms. Garza is an employee under the FCRA. Fla. Stat. § 760.01, *et seq*.

90.    Ms. Garza is a qualified individual with a disability[2] as defined in the FCRA in that she is deaf and she is qualified for her position, and to promote to a package car driver position. Fla. Stat. § 760.01, *et seq*.

91.    Since at least November 2020, Defendant has engaged in unlawful employment practices against Ms. Garza by limiting, segregating, or classifying her in a way which deprived or tended to deprive any employment opportunities, or adversely affect her status as an employee, because of her disability. Fla. Stat § 760.10.

92.    Since at least November 2020, Defendant has engaged in an unlawful employment practice by discriminating against Ms. Garza based on disability in the provision of training, or retraining, including participation in on-the-job training

---

[2] Fla. Stat. § 760.01, *et seq.* uses an archaic term "handicap" to refer to "disability."

programs. Fla. Stat § 760.10.

93.    The unlawful employment practices contained in Count III caused significant emotional and mental anguish, pain and suffering, stress, humiliation, and frustration to Ms. Garza.

94.    The employment practices contained in Count III resulted in loss of income and adverse employment actions and other economic harms against Ms. Garza.

95.    As a direct and proximate result of Defendant's continuous discrimination on the basis of disability, Ms. Garza suffered pecuniary damages, actual damages, mental anguish, emotional distress, loss of enjoyment of life, and other non-pecuniary losses.

96.    The unlawful employment practices contained in Count III were done by UPS with malice and with reckless disregard to the federally protected rights of Ms. Garza, and she is entitled to punitive damages from UPS.

## CLAIM IV

### FAILURE TO PROMOTE IN VIOLATION OF FCRA

97.    Ms. Garza realleges the allegations in ¶¶ 1-62 of this Complaint.

98.    Defendant is an employer and a covered entity under the FCRA subject to its provisions. Fla. Stat. § 760.02, *et seq*.

99.    Ms. Garza is an employee under the FCRA. Fla. Stat. § 760.01, *et seq*.

100.    Ms. Garza is a qualified individual with a disability as defined in the FCRA in that she is deaf and is qualified to apply for and begin the process of

promoting for a package car driver.  Fla. Stat. § 760.01, *et seq.*

101.    At all times material, Ms. Garza was and is an individual with a disability as defined by Florida State law. Ms. Garza is deaf, UPS had a record of her disability, and the UPS regarded Ms. Garza as being disabled. Fla. Stat. § 760.01, *et seq.*

102.    Ms. Garza could perform the essential functions of her position without reasonable accommodations, or with reasonable accommodations including, but not limited to sign language interpreters to begin the process of promoting to a package car driver position. Fla. Stat. § 760.01, *et seq.*

103.    Since at least November 2020, Defendant has engaged in unlawful employment practices against Ms. Garza by denying her the promotion to a driver position in violation of the FCRA. Fla. Stat. § 760.01, *et seq.*

104.    Ms. Garza is protected against discrimination under the FCRA. Fla. Stat. § 760.01, *et seq.*

105.    The employment practices contained in Count IV resulted in loss of income and adverse employment actions and other economic harms against Ms. Garza.

106.    Ms. Garza has been damaged as a direct and proximate result of Defendant's illegal employment practices, including suffering economic damages, compensatory damages, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and tangible injuries. Fla. Stat. § 760.01, *et seq.*

107.    The unlawful practices contained in Count IV were done by UPS with

malice or with reckless disregard to Ms. Garza's statutorily protected rights, and she is entitled to punitive damages from UPS under the FCRA. Fla. Stat. § 760.11 (5).

## COUNT V

## RETALIATION IN VIOLATION OF THE FCRA

108.    Ms. Garza repeats and re-alleges allegations ¶¶ 1-62 in support of her claims.

109.    UPS is an employer as defined under the FCRA. Fla. Stat. § 760.02, *et seq*.

110.    Ms. Garza is an individual with a disability as defined in the FCRA. Fla. Stat. § 760.01, *et seq*.

111.    Ms. Garza is a qualified individual with a disability as defined in the FCRA because she was qualified for her preload position and to promote to a driver position. Fla. Stat. § 760.01, *et seq*.

112.    Defendant engaged in unlawful retaliation against Ms. Garza because she engaged in the protected activities of requesting ASL interpreters, requesting staff be trained to work with deaf employees, applying for a promotion to a truck driving position, and when filing union grievances to protect her federal and state employment rights.

113.    Defendant's retaliation against Ms. Garza violates the FCRA. Fla. Stat. § 760.10(7).

114.    The employment practices contained in Count V resulted in loss of income and adverse employment actions and other economic harms against Ms.

Garza.

115.   The unlawful employment practices contained in Count V caused significant emotional and mental anguish, pain and suffering, stress, humiliation, and frustration to Ms. Garza.

116.   As a direct and proximate result of Defendant's continuous retaliation and discrimination on the basis of disability, Ms. Garza suffered pecuniary damages, actual damages, mental anguish, emotional distress, loss of enjoyment of life, and other non-pecuniary losses. Fla. Stat. § 760.01, *et seq.*

117.   The unlawful employment practices contained in Count V were done by UPS with malice or with reckless disregard to Ms. Garza's protected rights, and she is entitled to punitive damages from UPS. Fla. Stat. § 760.11 (5).

## RELIEF REQUESTED

**WHEREFORE**, Ms. Garza requests the following relief:

A.   The Court assume Jurisdiction;

B.   Find and hold Ms. Garza has suffered from Defendant's acts  of discrimination, on the basis of disability, in violation of the Americans with Disabilities Act and the Florida Civil Rights Act;

C.   Find and hold Ms. Garza has suffered from Defendant's acts  of retaliation in violation of the Americans with Disabilities Act and The Florida Civil Rights Act;

D.   Order Defendant to train its staff about the legal rights of Deaf employees to be reasonably accommodated and be promoted to

package truck drivers;

E.    Order that Ms. Garza be awarded the back pay that she would have earned, inclusive of all forms of compensation and lost benefits, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices;

F.    Order that Ms. Garza be awarded front pay;

G.    Award Ms. Garza compensatory damages in an amount to be determined at trial:

H.    Order Defendant to make Ms. Garza whole by providing compensation for past and future non-pecuniary losses resulting from Defendant's unlawful employment practices, including emotional and mental anguish, pain and suffering, stress, humiliation and frustration inconvenience, loss of enjoyment of life, loss of dignity, and any other non-pecuniary losses or intangible injuries allowable by law or equity; in amounts to be determined at trial;

I.    Order Defendant to pay Ms. Garza punitive damages for the malicious and/or reckless conduct described above, in amounts to be determined at trial;

J.    Award reasonable attorneys' fees and expenses, including expert witness fees as allowed by law, all recoverable statutory costs, and all litigation expenses not otherwise expressly allowed by statute; and

K.      Grant such other legal and/or equitable relief as the Court may deem just

under the circumstances.

## JURY DEMAND

Ms. Garza demands trial by jury on all issues which can be heard by a jury.

Respectfully submitted this 21st day of November 2022.

**MORGAN AND MORGAN**

*/s/ Sharon Caserta*
Sharon Caserta, Esq.
Florida Bar No.: 0023117
Morgan & Morgan
Deaf/Disability Rights
501 Riverside Avenue, Suite 1200
Jacksonville, FL 32202
(904) 361-0078 (Voice)
(904) 245-1121 Videophone
(904) 361-4305 (Facsimile)
scaserta@forthepeople.com

*Counsel for Plaintiff*

## Certificate of Service

**I HEREBY CERTIFY** that the foregoing document was electronically filed on
this 21st day of November 2022 by using the CM/ECF system which will send a notice
of electronic filing to all counsel of record.

*/s/ Sharon Caserta*
Sharon Caserta